**The STATE of Ohio, Appellee,**

v.

**DURNWALD, Appellant.**

[Cite as *State v. Durnwald,* 163 Ohio App.3d 361, 2005-Ohio-4867.]

Court of Appeals of Ohio,
Sixth District, Sandusky County.

No. S–04–013.

Decided Sept. 16, 2005.

362

364

Robert G. Hart, Director of Law, for appellee.

Terrence R. Rudes, for appellant.

SKOW, Judge.

{¶ 1} This appeal comes to us from a judgment issued by the Fremont Municipal Court following a jury verdict finding appellant guilty of driving under the influence of an alcoholic beverage. Because we conclude that cumulative errors were prejudicial to appellant at trial, we reverse.

{¶ 2} On October 31, 2003, appellant, Brandon Durnwald, was arrested on several traffic violations, including driving under the influence, in violation of R.C. 4511.19(A)(1) and (A)(6).[1] Appellant pled not guilty and filed a motion to

---

1.   {¶ a} At the time of appellant's offense, R.C. 4511.19(A)(1) and (A)(6) stated as follows:

{¶ b} "(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:

suppress evidence obtained from sobriety or other tests performed to determine appellant's drug or alcohol levels, including the BAC DataMaster test result of 0.22, appellant's statements made during the stop, and police officers' observations or opinions regarding appellant's sobriety or alcohol or drug levels.

{¶ 3} Appellant also moved for dismissal of the case, arguing that the trooper's videotape showing appellant prior to the stop and during the performance of sobriety tests had been destroyed. Although requested in discovery, the videotape was not available because it had been allegedly erased and taped over by state highway patrol cadets who had been left alone in the trooper's vehicle during a training session. Appellant argued that since this was the only evidence of appellant's condition at the time of his arrest and could have refuted the officer's testimony, due process required dismissal of the charges.

{¶ 4} Appellant ultimately withdrew the motion to suppress as to the BAC DataMaster breath test. The trial court denied the motion to suppress the other evidence, as well as the motion to dismiss the trooper's testimony as to the sobriety tests on the basis that the videotape evidence had not been preserved.

{¶ 5} At trial, the trooper testified that at 10:41 p.m. on October 31, 2000, he observed appellant fail to stop at a stop sign and then suddenly stop in the middle of the intersection. After making a U-turn, the trooper followed appellant, who, according to the trooper, made a wide right turn, driving his vehicle at least halfway over the center line. After the trooper stopped appellant for the stop-sign violation, the trooper testified, appellant's eyes were red and glassy and his speech was slurred. According to the trooper, appellant failed the gaze nystagmus test and the one-leg-stand field sobriety test. The trooper testified that appellant did not indicate that he wore contact lenses, that he had had any head injuries, or that he had any other physical impairment that would affect his ability to perform the sobriety tests. Over appellant's objections, the trooper noted that appellant refused to take the portable breath test ("PBT") prior to his arrest.

{¶ 6} After being taken to the patrol post, appellant then agreed to submit to the BAC DataMaster test. The trooper said he did not notice anything unusual during the required 20-minute pretest observation period. The results of appellant's BAC DataMaster test were 0.22. The state then rested.

---

{¶ c} "(1) The person is under influence of alcohol, a drug of abuse, or alcohol and a drug of abuse.

{¶ d} " * * *

{¶ e} "(6) The person has a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath." 2003 Am.Sub.H.B. No. 87.

{¶ 7} Appellant then offered testimony from people who had been with him during the evening prior to his stop and arrest: his mother, his brother-in-law, and his wife. According to these witnesses' testimony, the cumulative amount of alcohol consumed by appellant between 5:30 p.m. and 10:30 p.m. was five light beers. Each of the witnesses stated that appellant did not appear to be or act intoxicated or under the influence of alcohol at any time during the evening.

{¶ 8} Appellant then testified, stating that at 5:30 p.m., he had consumed one beer during his "all-you-can-eat" walleye dinner with his mother and grandfather. He said he then went to his brother-in-law's home from about 6:30 p.m. to 9:30 p.m., where he consumed three more beers while watching TV. He and the brother-in-law went to a local bar at 9:30, where, appellant said, he drank one more beer. Appellant said he dropped the brother-in-law off at his home at about 10:30 p.m. and drove home. He acknowledged that he did not stop completely at the stop sign and admitted to the trooper that he had consumed some beer that evening, but denied that he was under the influence of alcohol.

{¶ 9} Appellant also testified that he had snuff (chewing tobacco) in his lip at the time of the stop, which he spit out at the trooper's request so that the trooper could understand his speech. He also stated that he told the trooper that he had had a head injury, a fractured skull, as a child. After conducting the nystagmus test, the trooper informed appellant that he had failed it. Appellant then refused the PBT, but agreed to do the one-leg test. In court, he stated that he followed the trooper's instructions, saying that he did "just as good as I would do right now. * * * All right. I mean, not great, not horrible."

{¶ 10} Appellant was arrested, transported to the patrol post, and agreed to take the breath-alcohol test there to clear himself. Appellant also testified that he suffers from and takes prescription medication for acid reflux. He said that when he gets nervous, the acid reflux condition flares up, causing him to burp and hiccup. Appellant stated that he was nervous while talking to the trooper and that at the time he was taking the BAC test, he was burping and hiccupping.

{¶ 11} During trial, appellant also sought to introduce the testimony of Dr. Alfred Staubus, an expert in pharmacokinetics, to describe the actions and level of impairment shown by a person with an 0.22 BAC test level compared to appellant's behavior and to testify about how the BAC test results could be affected if a person has gastroesophageal reflux disease ("GERD"). The trial court denied admission of the expert testimony as to the impairment comparison, but permitted limited testimony as to the effects of GERD. Appellant then proffered in an affidavit as to Dr. Staubus's proposed testimony.

{¶ 12} Dr. Staubus ultimately testified that hypothetically, a person of appellant's height and weight of 205 pounds who had eaten dinner and consumed five light beers over the course of five hours should have tested on the DataMaster to

a range of equal to or less than 0.02 grams per 210 liters of breath, well below the per se violation level for intoxication. He opined that for a person of appellant's height and weight to test at .22 under the facts presented, that person would have had to consume 16.6 to 19.3 12–ounce light beers. After many objections by the state based on an alleged lack of medical documentation of appellant's acid reflux condition, Staubus testified that people who suffer from GERD have excess burping which, if occurring at the time of taking the breath-alcohol test, could cause an inaccurate reading of the person's actual breath alcohol by the DataMaster machine.

{¶ 13} During deliberations, the jury submitted an inquiry as to "whether the difference between the two charges is whether we [accept] the concentration of the alcohol content on the second charge." The court reread the jury instructions regarding the two charges, and the jury returned to deliberations. Ultimately, the jury found appellant guilty on both charges.

{¶ 14} Appellant now appeals from that judgment, setting forth the following six assignments of error:

{¶ 15} "First Assignment of Error:

{¶ 16} "The state violated defendant's right to due process when it destroyed favorable evidence that was material to the issue of guilt.

{¶ 17} "Second Assignment of Error:

{¶ 18} "The court committed reversible error by allowing testimony regarding defendant's refusal of the preliminary breath test. The court further erred by not instructing the jury on the refusal to take a preliminary breath test.

{¶ 19} "Third Assignment of Error: .

{¶ 20} "The court committed reversible error and denied defendant due process of law, right to counsel, and right to jury trial by limiting the testimony of Dr. Staubus.

{¶ 21} "Fourth Assignment of Error:

{¶ 22} "The state violated defendant's right to a fair trial when, during trial and without prior notice, the state attempted to subject defendant to a sobriety test.

{¶ 23} "Fifth Assignment of Error:

{¶ 24} "The court committed substantial prejudicial error in not instructing the jury as requested by defendant.

{¶ 25} "Sixth Assignment of Error:

{¶ 26} "The accumulation of errors in the trial denied the defendant a fair trial."

I

{¶ 27} In his first assignment of error, appellant argues that the trial court erred in failing to suppress testimony by the arresting officer regarding the performance of field sobriety tests when the police cruiser videotape showing those tests had been destroyed.

{¶ 28} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside*, supra, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. The appellate court then conducts a de novo review to determine, as a matter of law and without deference to the trial court's conclusions, whether those findings satisfy the applicable standard. *Burnside*, supra.

{¶ 29} The state's failure to preserve materially exculpatory evidence violates a defendant's due process rights under the Fourteenth Amendment to the United States Constitution. See *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281; *California v. Trombetta* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413. The burden rests with the defendant to prove that the evidence in question was materially exculpatory. See *State v. Jackson* (1991), 57 Ohio St.3d 29, 33, 565 N.E.2d 549. Such evidence is deemed materially exculpatory if "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Johnston* (1988), 39 Ohio St.3d 48, 61, 529 N.E.2d 898, citing *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Jackson*, 57 Ohio St.3d at 33, 565 N.E.2d 549.

{¶ 30} In contrast, evidence is not materially exculpatory if it is merely potentially useful. See *State v. Lewis* (1990), 70 Ohio App.3d 624, 591 N.E.2d 854. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. See id. at 634, 591 N.E.2d 854. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith. *Arizona v. Youngblood*, 488 U.S. at 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281; *State v. Keith* (1997), 79 Ohio St.3d 514, 523, 684 N.E.2d 47; *State v. Combs*, 5th Dist. No. 03CA–C–12–073, 2004-Ohio-6574, 2004 WL 2813273, at ¶ 16. The

"term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *State v. Wolf,* 154 Ohio App.3d 293, 2003-Ohio-4885, 797 N.E.2d 109, at ¶ 14, quoting *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 452 N.E.2d 1315.

{¶ 31} In the present case, since only the trooper viewed the videotape before it was erased, appellant cannot show that the evidence was materially exculpatory. The tape may have supported appellant's version of his actions during the stop and is, therefore, potentially useful. Consequently, in order to show that appellant's due process rights were violated, he must demonstrate that the trooper's actions amounted to bad faith.

{¶ 32} Evidence was presented at trial that the Ohio State Highway Patrol policy regulations now require that all traffic stops, pursuits, and crash scenes be recorded on videotape. Once made, the videotape is then to be preserved as evidence until all criminal and civil actions have been completed. Appellant requested the tape of his stop within a few days after it was made, well before the regulations allow it to be erased. The trooper testified that he had viewed the tape, which clearly recorded appellant's stop.

{¶ 33} The trooper further stated that "for just a DUI arrest," it was the "practice at the post" to leave a tape in the machine until the six-hour time limit was completed, unless the tape contained a pursuit or significant crash that required review by a supervisor. Although the videotape was easily removed from the recorder in the trunk of his cruiser, the only action the trooper took to preserve the tape was not to turn the recording system on.

{¶ 34} Nevertheless, the videotape was "accidentally" partially erased, and several DUI stops were recorded over, including appellant's stop. This allegedly occurred when cadets in training were left unattended in the patrol cruiser. The trooper acknowledged that he did not tell the cadets not to touch anything in his vehicle. He also stated that the tape would have had to have been first partially rewound in order to record over the section with appellant's DUI.

{¶ 35} Since it is likely that a defendant may ask for the videotape, and it has obvious evidentiary value and importance to substantiate a trooper's version of the events leading up to an arrest, this court finds it incredible that such "accidental" erasures continue to occur. Once made, the videotape must be preserved, just as any other evidence regarding an alleged crime or arrest would be preserved.

{¶ 36} Although the trooper's actions in this case may not have been totally intentional, the videotape erasure was not an accident related to machine

malfunction. Rather, the erasure occurred due to the trooper's complete and utter failure to safeguard evidence relevant to a crime and arrest. In view of the obvious ease in simply removing the videotape after an evening's shift and the Highway Patrol's own regulation requiring preservation of this evidence, the failure to protect and preserve the videotape under these circumstances encompasses more than mere negligence or an error in judgment. In our view, such a continuing cavalier attitude toward the preservation of DUI videotape evidence rises to the level of bad faith. The videotape was the only direct evidence available to appellant to show appellant's condition at the time of arrest and is, therefore, unique and unattainable by other means. Therefore, since the videotape was not preserved, any testimony by the trooper regarding evidence that may have been recorded by the videotape, including field sobriety tests or statements made by appellant, should have been suppressed.

{¶ 37} Accordingly, appellant's first assignment of error is well taken.

## II

{¶ 38} In his second assignment of error, appellant argues that the trial court erred in permitting the prosecution to present testimony on or comment about appellant's refusal to take a preliminary or portable breath test ("PBT"). The trial transcript reveals that appellant's objection to the trooper's testimony about the PBT was withdrawn later in the trial. Therefore, any error is waived unless it rises to the level of plain error. See Crim.R. 52(B); *United States v. Olano* (1993), 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (defendant bears the burden of demonstrating that a plain error affected his substantial rights). To affect "substantial rights," an error must have "substantial and injurious effect or influence in determining the * * * verdict." *Kotteakos v. United States* (1946), 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to " 'prevent a manifest miscarriage of justice.' " *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 39} Generally, evidence regarding a refusal to submit to a *reasonably reliable* chemical test for intoxication is admissible in evidence at trial. See *Maumee v. Anistik* (1994), 69 Ohio St.3d 339, 632 N.E.2d 497; *State v. McCoy*, 5th Dist. No. 2001 CA00125, 2002-Ohio-1855, 2002 WL 571686, citing *State v. Murphy* (Dec. 29, 1995), Brown App. No. CA 95-05-010, 1995 WL 764049. Nonetheless, even when a refusal is admissible, whether it is conditional, unequivocal, or a combination, the trial court should give an appropriate jury instruction as to the relevance of and weight to be given the refusal. *Anistik*, supra, at 344,

632 N.E.2d 497. The jury instruction provides the proper neutrality and allows the jury to weigh all the facts and circumstances surrounding any decision not to submit to testing. Id.

{¶ 40} The results of a PBT, however, are generally not admissible as evidence. See, e.g., *State v. Delarosa*, 11th Dist. No. 2003–P–0129, 2005-Ohio-3399, 2005 WL 1538264, at ¶ 55; *Cleveland v. Sanders*, 8th Dist. No. 83073, 2004-Ohio-4473, 2004 WL 1902228 (PBT inadmissible); *State v. Ferguson*, 3rd Dist. No. 4–01–34, 2002-Ohio-1763, 2002 WL 596115 ("results of the PBT are inadmissible because the Ohio Department of Health no longer recognizes the test"). Ohio Adm.Code 3701–53–02 lists four approved evidential breath-testing instruments for use "in determining whether a person's breath contains a concentration of alcohol prohibited or defined by sections 4511.19."[2] None of these are defined or designated, however, as a "portable" or "preliminary" breath test. Therefore, we must presume, unless evidence or testimony to the contrary is presented, that the refusal of a PBT is considered inadmissible due to its unreliability.

{¶ 41} In this case, no evidence was presented that the PBT refused by appellant was any of the approved tests under Ohio Adm.Code 3701–53–02. Consequently, we conclude that since the PBT test itself would have been inadmissible, evidence of the refusal of that test is also inadmissible, and any reference to it was error. We must now determine whether, under the plain-error standard, that error violated appellant's substantial rights and created a manifest miscarriage of justice.

{¶ 42} In this case, the trial court did not give any type of curative or limiting instruction as to the use of the refusal information and the unreliability of PBTs generally. Testimony was presented that appellant did later submit to the BAC DataMaster test. Nevertheless, evidence that he initially refused the PBT could have been construed as an indication that he initially believed he was intoxicated. When viewed within the context of the other errors, the repeated references to the PBT may have influenced the jury's decision, which, thus, violated appellant's substantial rights and contributed to the creation of a manifest miscarriage of justice. Therefore, we conclude that the court's admission of evidence of the refusal to take the PBT was prejudicial and rises to the level of plain error.

{¶ 43} Accordingly, appellant's second assignment of error is well taken.

---

**2.** At the time of appellant's offense, the approved evidential breath-testing instruments listed were (1) BAC DataMaster and BAC DataMaster cdm, (2) Intoxilyzer model 5000 series 66, 68, and 68 EN, (3) Alco-sensor RBT III, and (4) Intoxilyzer model 8000. See Ohio Adm.Code 3701–53–02.

## III

{¶ 44} In his third assignment of error, appellant argues that the trial court improperly limited the testimony of his expert witness, Dr. Staubus. We agree.

{¶ 45} A trial court's decision to exclude evidence is not grounds for reversal unless the record clearly demonstrates that the trial court abused its discretion and that the complaining party has suffered a material prejudice. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875.

{¶ 46} Relevant evidence is generally admissible; irrelevant evidence is not. Evid.R. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evid. R. 702 provides:

{¶ 47} "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

{¶ 48} The phrase "other specialized knowledge" as found in the rule means knowledge that has been acquired by that person through experience, training, or education and that would assist the trier of fact in understanding the evidence or a fact at issue that is beyond common experience. *State v. Stowers* (1998), 81 Ohio St.3d 260, 262, 690 N.E.2d 881. An expert's opinion may be based on facts or data perceived by him or it may be drawn from knowledge gained from other experts in the field. *State v. Lawson* (Feb. 28, 2000), Butler No. CA99–01–003, 2000 WL 221959; *State v. Echols* (1998), 128 Ohio App.3d 677, 698, 716 N.E.2d 728. This information forms the "scientific, technical, or other specialized knowledge" that qualifies the witness as an expert. Evid.R. 702; *Kane v. Ford Motor Co.* (1984), 17 Ohio App.3d 111, 112, 17 OBR 173, 477 N.E.2d 662.

{¶ 49} Although a defendant may not attack the general scientific reliability and validity of an approved breath-alcohol testing instrument, he or she may attack the reliability of the specific testing procedure as it pertains to him or her and may submit expert testimony as to testing procedures going to weight rather than admissibility. *Columbus v. Day* (1985), 24 Ohio App.3d 173, 174, 24 OBR 263, 493 N.E.2d 1002, citing *State v. Tanner* (1984), 15 Ohio St.3d 1, 6, 15

OBR 1, 472 N.E.2d 689; *State v. Vega* (1984), 12 Ohio St.3d 185, 189, 12 OBR 251, 465 N.E.2d 1303. Thus, even if the technical administration of the DataMaster test and machine complied with ODH regulations, a defendant may still challenge the accuracy of and weight to be given the specific BAC test result at trial. *Day*, supra; *Tanner*, supra. For example, an accused may present relevant expert testimony to show that something went wrong with the defendant's test and that "as a consequence, the result was at variance with what the approved testing process should have produced." *Day*, supra, 24 Ohio App.3d at 174, 24 OBR 263, 493 N.E.2d 1002; *State v. Alborn*, 5th Dist. No. 2002CA00171, 2003-Ohio-973, 2003 WL 728925. See, also, e.g., *Columbus v. Taylor*, 39 Ohio St.3d 162, 529 N.E.2d 1382 (expert permitted to testify as to the effects of burping or belching on a BAC reading); *Tanner*, supra (matter for jury to consider the effect of defendant's dentures on his BAC test result).

{¶ 50} In this case, evidence of the 0.22 BAC level was admitted on behalf of the state to prove a violation for both the per se charge under R.C. 4511.19(A)(6) and the impairment charges under R.C. 4511.19(A)(1). Over various interruptions and objections, Dr. Staubus's testimony was ultimately permitted regarding the effects of GERD on the BAC test results because the court deemed it pertinent to the per se charge. Dr. Staubus was not, however, permitted to testify regarding the expected behavior of someone who tested at 0.22 BAC level, for the purposes of refuting the R.C. 4511.19(A)(1) impairment charge. The jurors' inquiry during deliberations indicated some confusion regarding the weight and significance of the BAC test, since they specifically asked for clarification of that issue regarding each of the charges. In our view, the expert testimony regarding the expected behavior of a person with a 0.22 BAC level was relevant to appellant's defense against the accuracy of his particular BAC test. It was simply an alternative piece of evidence to support appellant's theory of the inaccuracy of the specific test and may have assisted and clarified the jury's understanding of the weight to be given to the BAC test results for each charge. Therefore, the trial court abused its discretion by not permitting Dr. Staubus to testify about the effects on and impairment to the behavior of a person with appellant's BAC test results.

{¶ 51} Accordingly, appellant's third assignment of error is well taken.

IV

{¶ 52} Appellant claims, in his fourth assignment of error, that he was denied a fair trial when the state requested him to perform a field sobriety test in court. In essence, appellant is arguing that the prosecutor's conduct was improper and prejudicial to his case.

{¶ 53} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights. *State v. Twyford* (2002), 94 Ohio St.3d 340, 354–355, 763 N.E.2d 122. The touchstone of this analysis " 'is the fairness of the trial, not the culpability of the prosecutor.' " Id. at 355, 763 N.E.2d 122, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether absent the improper remarks, the jury would have found the appellant guilty. *State v. Willard* (2001), 144 Ohio App.3d 767, 773, 761 N.E.2d 688.

{¶ 54} The conduct of a prosecuting attorney during a trial generally cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. See *State v. Papp* (1978), 64 Ohio App.2d 203, 211–212, 18 O.O.3d 157, 412 N.E.2d 401. Moreover, it has been held a trial court must afford the prosecutor some latitude and freedom of expression during argument. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394. Therefore, a defendant is entitled to a new trial only when the prosecutor makes improper remarks and those remarks substantially prejudice the defendant. *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 168, 749 N.E.2d 226; *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883. "The prosecutor carries into court the prestige of 'the representative * * * of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest * * * is not that it shall win a case, but that justice shall be done. * * * Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.' " *State v. Keenan* (1993), 66 Ohio St.3d 402, 406, 613 N.E.2d 203, quoting *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314.

{¶ 55} In this case, the prosecutor's suggestion that appellant demonstrate his ability to perform the one-leg test was in response to appellant's comment that he would do as well in court as he had on the night of his arrest. While we agree that the prosecutor's suggestion may have been a bit of grandstanding for the benefit of the jury, we cannot say that it rose to the level of egregiousness required for reversal. Defense counsel addressed the reasons for appellant's declining to perform the test: different conditions and lack of relevance, since appellant's performance in court could be affected by other variables. Therefore, while we cannot condone such tactics, we decline to find that the prosecutor's request that appellant perform the test was so egregious as to constitute reversible error.

{¶ 56} Accordingly, appellant's fourth assignment of error is not well taken.

V

{¶ 57} Finally, appellant argues in his sixth assignment of error that he was denied a fair trial because of cumulative errors. In light of our previous discussions and disposition of the assignments of error, we agree.

{¶ 58} Separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 397, 721 N.E.2d 52. In order to find cumulative error present, we first must find that multiple errors were committed at trial. See id. at 398, 721 N.E.2d 52. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. See *State v. Thomas* (Sept. 21, 2001), 2d Dist. No. 2000–CA–43, 2001 WL 1103328.

{¶ 59} As we have already concluded, multiple prejudicial errors occurred during the trial: the inclusion of testimony regarding the videotape evidence, the exclusion of the testimony of Dr. Staubus, and references made to appellant's refusal to submit to the PBT. Since the effect of these errors may have, in fact, influenced the jury and caused a different outcome, we conclude that the cumulative effect of these errors was not harmless.

{¶ 60} Accordingly, appellant's sixth assignment of error is well taken. Appellant's fifth assignment of error concerning jury instructions is hereby rendered moot.

{¶ 61} The judgment of the Fremont Municipal Court is reversed, and this case is remanded for a new trial or for proceedings consistent with this decision.

Judgment reversed.

SINGER, P.J., and PIETRYKOWSKI, J., concur.