OPINION
{¶ 1} Shortly after 2:00 a.m., on August 31, 2003, Trooper John Johnson of the Ohio State Highway Patrol observed defendant-appellant, Nicholas M. Sabo, driving an automobile northbound on Interstate 71 in Franklin County, Ohio. The trooper witnessed defendant traveling 65 m.p.h. (which is within the posted speed limit) approximately five feet behind another vehicle. He also observed defendant weave in his lane of travel over the white edge line several times, each time by a distance of two tire widths. The trooper followed defendant for about a mile and then pulled him over. Defendant rolled down his window as the trooper approached his car. The trooper immediately detected a strong odor of alcohol about defendant; he also noted that defendant's eyes were bloodshot and glassy.
 {¶ 2} Thereafter, the trooper requested that defendant exit his vehicle and be seated in the patrol car. Defendant spontaneously stated that he "could [not] afford a DUI" because he was in the process of obtaining employment with a law enforcement agency. (Tr. Vol. II, at 296.) Inside the patrol car, the trooper once again detected a strong odor of alcohol about defendant and saw that his eyes were bloodshot and glassy; he also noted that defendant's speech was slightly slurred. Upon questioning, defendant admitted that he had been drinking. Thereafter, the trooper administered two field sobriety tests, which defendant failed.
 {¶ 3} Defendant was subsequently arrested and transported to a police station, where he agreed to submit to a BAC DataMaster test. The test yielded a result of .117 grams of alcohol per 210 liters of breath. Defendant was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C.4511.19(A)(1), operating a motor vehicle with a prohibited alcohol concentration in violation of R.C. 4511.19(A)(3), and failing to drive within marked lanes in violation of R.C.4511.33.
 {¶ 4} Defendant filed a motion to suppress evidence obtained from sobriety or other tests performed to determine defendant's alcohol level, including the BAC DataMaster test result of .117 and the trooper's observations or opinions regarding defendant's sobriety or alcohol levels. Following a hearing, the trial court, in a written decision filed April 7, 2004, overruled defendant's motion to suppress.
 {¶ 5} The case proceeded to a jury trial in the Franklin County Municipal Court. The state presented the above cited testimony of Trooper Johnson. Defendant presented the testimony of Scott Kotterman, a police officer friend of defendant, who picked defendant up from the police station after he was released from custody. According to Mr. Kotterman, when defendant emerged from the police station, he did not appear to be under the influence of alcohol. Mr. Kotterman admitted, however, that he did not know how much defendant had to drink prior to his arrest.
 {¶ 6} At the conclusion of the evidence and the end of deliberations, the jury found defendant guilty on the R.C.4511.19(A)(1) and (A)(3) charges and the court found defendant guilty on the R.C. 4511.33 charge. At the sentencing hearing, the state elected to sentence defendant on the R.C. 4511.19(A)(1) charge rather than the R.C. 4511.19(A)(3) charge. Pursuant to a "Sentence Entry" filed September 15, 2004, the trial court sentenced defendant for violating R.C. 4511.19(A)(1) and 4511.33; no sentence was imposed on the R.C. 4511.19(A)(3) charge. Defendant was sentenced to 180 days in jail and fined $250 on the R.C. 4511.19(A)(1) charge and $50 on the R.C. 4511.33 charge. His operator's license was suspended for one year from the date of the offense. The trial court credited three days for time served and suspended 174 days of defendant's jail sentence on condition of one year probation.
 {¶ 7} On appeal, defendant advances the following eight assignments of error:
I. It was error to interpret [State v. Vega] in a manner that required the court to misinform to the jury about the accuracy of the breath test and that prohibited the defendant from telling the truth.
II. Absent a Vega rationale, there was no other legitimate basis for barrning [sic] the defendant from exercising his constitutional right to litigate the only real issue in the case.
III. It was error to deprive the defendant of due process of the law and his only significant defense by instructing the jury that it must believe false information about the accuracy of the breath test while simultaneously prohibiting the defendant from presenting the truth.
IV. The defendant was deprived of his right to have the state prove its case and his right to confront witnesses against him when the jury was directed to believe the test even though there was no evidence that his test result was accurate.
V. Neither bureaucratic fiat nor legislative edict regarding the accuracy of the test can constitutionally deprive a defendant of his right to a judicial determination as to the weight of the evidence.
VI. The rules of evidence do not trump the Constitution. By prohibiting the defendant from asserting his innocence and presenting his only significant defense, the court deprived the defendant of his right to a trial by jury.
VII. Because there was no proof that the testing machine was accurate, either an unconstitutional conclusive presumption substituted for proof or there was a failure of proof.
VIII. Because the facts giving rise to the presumption where [sic] presented only in a suppression hearing and established only by only a preponderance of the evidence, the resulting trial presumption that the test was accurate did not meet the beyond a reasonable doubt standard.
 {¶ 8} As defendant's assignments of error are interrelated, we will address them together. Defendant contends the trial court erred in refusing to admit expert testimony at trial as to how the BAC DataMaster test results could be adversely affected if a person has gastroesophageal reflux disease ("GERD").
 {¶ 9} During opening statement, defense counsel, in discussing the Ohio Department of Health ("ODH") regulation mandating the analysis of deep lung (alveolar) air for purposes of determining whether a person has a prohibited breath alcohol concentration (see Ohio Adm. Code 3701-53-02), asserted that alcohol fumes brought up from the stomach into the mouth of a person suffering from GERD could contaminate deep lung air, causing an inaccurate reading of the person's actual breath alcohol by the BAC DataMaster. The prosecutor objected to further discussion of this issue on grounds that, absent evidence presented at trial that defendant actually had GERD, the issue was irrelevant.
 {¶ 10} In response, defense counsel averred that the issue was relevant to his defense theory that existing ODH testing procedures requiring administration of only one breath alcohol test are insufficient to ensure that only deep lung air is sampled. Defense counsel asserted that, in support of this theory, he planned to call an expert witness who would testify that "the basic [ODH] testing procedure is flawed" because "in every case you should do two tests" and that "scientifically, if you don't give two tests, you're not doing a good job of determining whether that air is alveolar air or whether it's air coming from somewhere else, and the procedure was flawed." (Tr. Vol. I, at 205, 206-207.) Defense counsel further asserted that the expert would testify that a person who regularly takes Tums or Zantac is likely to suffer from GERD, that the use of dip (chewing tobacco) causes or exacerbates the condition, and that GERD could be ruled out as a possible source of adverse test results through standardized administration of two breath alcohol tests followed by a comparison of the results. Defense counsel further stated that he planned to call a fact witness to testify that defendant regularly uses dip and takes Zantac and Tums.
 {¶ 11} The trial court first noted that defense counsel had not raised the GERD issue at the hearing on the motion to suppress. The court further noted the distinction between run of the mill acid indigestion and the medically diagnosed condition known as GERD. To that end, the court ruled that defendant's expert would not be permitted to express an opinion as to whether or not defendant had GERD. In response, defense counsel indicated that the expert would not testify specifically about defendant; rather, the expert would testify only "in the abstract" as to the relationship of Tums, Zantac, and dip to GERD and the possible effects of GERD on breath alcohol tests. (Tr. Vol. I, at 209.)
 {¶ 12} The prosecution argued that the proposed testimony presented both an improper challenge to defendant's specific test results (because there would be no direct evidence that defendant suffered from GERD or used dip, Zantac, and Tums), as well as an improper challenge to the general reliability of the BAC DataMaster. Defense counsel maintained that he did not intend to argue that the BAC DataMaster machine itself was unreliable; rather, he intended to argue only that ODH testing procedures requiring only one breath alcohol test are inadequate to rule out the possibility of GERD. Defense counsel argued that the proposed testimony went to the weight rather than the admissibility of defendant's breath alcohol test and, therefore, should be admitted at trial. As such, argued defense counsel, GERD was a proper subject for opening statement.
 {¶ 13} With the court's permission, defendant filed a written proffer indicating that, if permitted, he would have presented the following evidence. Dr. Alfred E. Staubus, Professor Emeritus of Pharmacology at The Ohio State University, would state that he was very familiar with the BAC DataMaster used in the instant case. He would hypothesize that, if he were testing a person's breath alcohol level and knew that the person regularly used Zantac, Tums, and dip, he would be suspicious that the person had GERD because dip can cause or exacerbate the condition, and Tums and Zantac are commonly used to treat the symptoms associated with GERD. Dr. Staubus would acknowledge that Tums can be used to prevent osteoporosis; however, he would state that there is normally no reason to take Zantac other than to treat GERD. Dr. Staubus would further state that a person could have GERD or a GERD episode without knowing it, as oftentimes the condition is not manifested through pain or other unusual physical sensations. He would further aver that alcohol fumes brought up from the stomach into the mouth of a person with GERD could contaminate the deep lung air sampled during a breath alcohol test, causing an inaccurate reading of the person's actual breath alcohol level. He would further opine that it would not be necessary to see someone belch or burp during a test to trigger a concern about the test result.
 {¶ 14} Dr. Staubus would opine that the best way to protect against this type of false reading is to administer two tests, separated by a waiting period, followed by a comparison of the test results. Dr. Staubus would aver that this dual testing procedure was adopted in 1986 by the National Safety Counsel's Committee On Alcohol and Other Drugs Subcommittee on Technology.[1] He would further opine that failure to adopt the dual testing approach virtually "guarantees that a significant percentage of the people tested in this state will generate false readings," as GERD is a common condition. (Proffer, at 5.) Accordingly, he concluded that performing only a single test is scientifically unacceptable in every case.
 {¶ 15} Further, Mr. Kotterman would testify that he had been defendant's roommate for some time and often observed defendant taking Tums and Zantac and using dip.
 {¶ 16} After reviewing the proffer, the trial court precluded the proposed testimony based on the Ohio Supreme Court's holding in State v. Vega (1984), 12 Ohio St.3d 185, discussed below. More particularly, the trial court excluded defendant's challenge to his specific test based on a lack of evidentiary support for that challenge while separately excluding the challenge to the general reliability of the testing procedure. The trial court noted initially:
There are many different ways of attacking * * * the defendant's specific test. But the proffered testimony of defense counsel in this case seems clear to me that defense counsel intends on attacking the general reliability of the test and not the specific test result in this case because he can't produce any evidence * * * that goes to this specific event and this specific test.
There's some nebulous thoughts about a possible acid reflux reaction that the defendant may have had that might have caused this specific test to be unreliable; however, the defense's argument is so tenuous that I believe I would be going against Ohio law to permit any discussions of any nature with regard to the lines of argument that defense counsel has thus presented. And, therefore, for those reasons, I'm again going to sustain the objection by the prosecutor and I'm not going to allow your expert to challenge the reliability of the breath-testing machine.
(Tr. Vol. I, at 226.)
 {¶ 17} In its final ruling on the issue, the trial court further distinguished between specific and general challenges to the breath alcohol test:
* * * [A]m I going to allow you to make any comments to the jury with regard to this specific test? The answer to that question is no. * * * [Y]ou've proffered, I think, a great deal of information to me about — and I've asked you questions about what you would intend the evidence to show in this case, and there is not any testimony that's going to come forward that would be relevant to the specific test. So I am not going to allow you to make any comment with regard to this specific test result nor would I allow your expert to testify with regard to the reliability, general reliability of these machines. * * *
(Tr. Vol. I, at 230.)
 {¶ 18} R.C. 4511.19 is a strict liability statute. Defiancev. Kretz (1991), 60 Ohio St.3d 1, 3, citing State v. Cleary
(1986), 22 Ohio St.3d 198, 199. In R.C. 4511.19(A)(3), the General Assembly defined an alcohol limit at which a person can no longer drive without posing a substantial danger to himself and others. State v. Tanner (1984), 15 Ohio St.3d 1, 6. When determining whether a defendant committed the "per se" offense set forth in R.C. 4511.19(A)(3), the trier of fact is not required to find that the defendant operated a motor vehicle while under the influence of alcohol or drugs; rather, the trier of fact must find only that the defendant's chemical test reading was at the proscribed level and that the defendant operated a motor vehicle within the state. Kretz, supra, citing Newark v.Lucas (1988), 40 Ohio St.3d 100, 103. As such, the accuracy of the test results is a critical issue in determining a defendant's guilt or innocence. Kretz, supra.
 {¶ 19} The admissibility in evidence of test results offered to establish a defendant's level of alcohol concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations. Id. The General Assembly has determined that results of breath alcohol tests are reliable evidence when administered in accordance with ODH regulations. Vega, supra, at 188. Accordingly, the Ohio Supreme Court has determined that, while a defendant may not use expert testimony to attack the general reliability of intoxilyzers as valid, reliable breath testing machines, a defendant may attack the reliability of the specific testing procedure and may submit expert testimony as to testing procedures going to weight rather than admissibility. Id. at 189. See, also, Tanner, supra ("[a] defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels"), and Whitehall v. Weese (Oct. 17, 1995), Franklin App. No. 95APC02-169 ("while a defendant `may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood-alcohol levels, he may challenge the accuracy of his specific test result.'" Id., quoting Columbus v. Day (1985),24 Ohio App.3d 173, 174.
 {¶ 20} Defendant contends the trial court misconstrued his argument as presenting a challenge only to the general reliability of the legislatively determined testing procedure. Defendant maintains that his proffered testimony presents a challenge to the reliability of his specific testing procedure, i.e., "the machine was unreliable in the narrow and specific instance where a single test was given to a person potentially suffering from GERD." Defendant argues that "a problem testing GERD victims is not the same thing as saying that the machine is generally unreliable" and that such a challenge is proper underVega.
 {¶ 21} As previously noted, the trial court indicated that it excluded defendant's challenge to the accuracy of his specific test results based on a lack of evidentiary support while separately excluding the challenge to the general accuracy of the testing procedure. We cannot find that the trial court erred in this regard.
 {¶ 22} As noted by the state, the difficulty in this case is that defense counsel attempted to challenge defendant's specific test result through argument and proffered testimony, which, in essence, challenged the general reliability of the testing procedure. Argument and testimony that, on the night in question, defendant experienced an episode of GERD and that the presence of regurgitated alcohol could have interfered with his test result might have presented a challenge to the reliability of defendant's specific test results. However, defense counsel at no point indicated that testimony would be offered at trial to establish that defendant experienced an episode of GERD at the time he took the breath alcohol test or that he even had the condition. Indeed, defense counsel admitted that Dr. Staubus would testify only "in the abstract" about the possible effects of GERD on breath alcohol tests and that neither defendant nor a medical professional would testify that defendant had GERD. Thus, to the extent defense counsel's argument and the proffered testimony could be viewed as presenting a challenge to the reliability of defendant's specific test results, we find that the trial court properly excluded the testimony based on a lack of evidentiary support.
 {¶ 23} In essence, argument and testimony that the "basic testing procedure" is flawed in "every case" and that a single test is never scientifically reliable is an attack on the general reliability of the testing procedure, not an attack on a specific test. The trial court properly concluded that such a challenge is precluded by Vega.
 {¶ 24} Defendant asserts that a decision in favor of the state on this issue poses a potential conflict with a recent case decided by the Sixth District Court of Appeals, State v.Durnwald, 163 Ohio App.3d 361, 2005-Ohio-4867. We disagree.
 {¶ 25} In Durnwald, the defendant was arrested after committing several traffic violations and failing two sobriety tests. Defendant submitted to a BAC DataMaster test, the results of which established a breath alcohol content of .22. The defendant was subsequently charged with operating a vehicle under the influence of alcohol and operating a motor vehicle with a prohibited alcohol concentration.
 {¶ 26} At trial, the defendant offered testimony from persons with whom he socialized prior to his stop and arrest, that he consumed five light beers in the five hours prior to his stop and arrest, and did not appear to be under the influence of alcohol at any time prior to the arrest. Defendant corroborated the five beers in five hours testimony and further testified that he had snuff (chewing tobacco) in his lip at the time of the stop. He further testified that he suffered from and took prescription medication for acid reflux, that the acid reflux condition flared up when he was nervous, causing him to burp and hiccup, that he was nervous while talking to the arresting officer, and that at the time he took the BAC test he burped and hiccupped.
 {¶ 27} During trial, the defendant sought to introduce expert testimony from Dr. Staubus to describe the actions and level of impairment exhibited by a person with a .22 BAC test level compared to the defendant's behavior and to testify about how the BAC test results could be affected if a person has GERD. The trial court denied admission of the expert testimony as to the impairment comparison, but permitted limited testimony as to the effects of GERD. The defendant then proffered in an affidavit as to Dr. Staubus's proposed testimony.
 {¶ 28} In Durnwald, Dr. Staubus ultimately testified that, hypothetically, a person of the defendant's height and weight should have tested in a range of equal to or less than.02. He opined that, for a person of the defendant's height and weight to test at .22 under the facts presented, that person would have had to consume considerably more than five light beers. Dr. Staubus further testified that persons who suffer from GERD have excess burping which, if occurring at the time of taking the breath alcohol test, could cause an inaccurate reading of the person's actual breath alcohol by the DataMaster machine.
 {¶ 29} On appeal, defendant argued that the trial court improperly limited Dr. Staubus's testimony as to the impairment comparison. The state did not cross-appeal the admission of the GERD testimony; as such, the court of appeals had no occasion to address the propriety of that admission. The court merely noted, incidentally, that "Dr. Staubus's testimony was ultimately permitted regarding the effects of GERD on the BAC tests results because the court deemed it pertinent to the per se charge."Durnwald, at ¶ 50.
 {¶ 30} Further, the instant case is factually distinguishable from Durnwald. As noted, the defendant in Durnwald testified that he suffered from and took prescription medication for GERD. He also testified that the condition flared up when he was nervous, which caused him to hiccup and burp, and that he was nervous and hiccupped and burped when he was taking the test. In contrast, defendant provided no evidence in the instant case that he actually suffered from GERD, other than that he took non-prescription Zantac, or that he burped or hiccupped or was otherwise suffering from GERD at the time he took the DataMaster test. Because the factual foundation underlying the admission of Dr. Staubus's testimony in Durnwald was considerably more substantial than the speculative foundation of the instant case, we find that the two cases are clearly distinguishable.
 {¶ 31} Finally, we note that the Durnwald case stands for a different proposition than that asserted in the instant case. InDurnwald, the court noted that "Dr. Staubus was not, however, permitted to testify regarding the expected behavior of someone who tested at 0.22 BAC level, for the purposes of refuting theR.C. 4511.19(A)(1) impairment charge." (Emphasis added.) Id. In the instant case, defendant did not argue that Dr. Staubus's testimony should be admitted for the purpose of refuting the R.C.4511.19(A)(1) impairment charge. Rather, defendant sought to introduce Dr. Staubus's testimony for the sole purpose of refuting the R.C. 4511.19(A)(3) charge. Indeed, on appeal, defendant does not address or present any argument regarding his conviction under R.C. 4511.19(A)(1). Thus, Durnwald is inapposite.
 {¶ 32} We now turn to defendant's remaining arguments. Defendant first contends that Vega is inapplicable to the instant case because: (1) the statute construed in Vega
established a rebuttable presumption and the statute establishes a "per se" offense; (2) the scientific conclusions upon whichVega was based were offered by an ODH expert who was subsequently fired for giving false testimony; and (3) the breath testing device used in Vega is different from the one used in the instant case. Defendant next contends that Vega is "confusing" and urges this court to "clarify" it. Finally, defendant asserts that the trial court's application of Vega
violated several constitutional principles, including the right to due process, the right to confront one's accusers, the right to a jury determination of guilt, the right to present a complete defense, and the prohibition against conclusive presumptions in criminal cases.
 {¶ 33} We note, initially, that defendant failed to raise any of these arguments in the trial court, resulting in a waiver of all but plain error. State v. Barnes (2002), 94 Ohio St.3d 21,27. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists only where there is a deviation from a legal rule, the error constitutes an "obvious" defect in the trial proceeding, and the error affected the defendant's "substantial rights." Barnes, at 27. Crim.R. 52(B) does not require an appellate court to correct a forfeited error, even if it satisfies all three of these prongs, as the rule states only that a reviewing court "may" notice plain errors. Id. Accordingly, plain error is recognized " `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 34} We decline to find plain error in this case. Defendant's arguments regarding the inapplicability of Vega are without merit. In Tanner, supra, the Ohio Supreme Court appliedVega to the then recently enacted "per se" statute. The qualifications of a former ODH director and the ODH's decision to change breath testing machines are irrelevant to the instant case. Further, we decline defendant's invitation to "clarify"Vega. As we have previously noted, "this court is charged with accepting and enforcing the law promulgated by the Ohio Supreme Court, not changing, modifying or ignoring that law." State v.Miskel (Mar. 28, 2000), Franklin App. No. 99AP-482, quotingColumbus v. Duling (Mar. 31, 1997), Franklin App. No. 96APC07-859. Finally, this court has previously rejected defendant's constitutional challenges. In State v. Eberts
(Sept. 26, 2000), Franklin App. No. 99AP-1327, we stated:
* * * [I]n Columbus v. Duling * * *, we declined to embrace a defendant's argument that the trial court violated his constitutional rights when it precluded him from attacking the general reliability of a breath test machine. In so declining, we indicated that "[a]ny change in the law regarding a defendant's right to challenge the general scientific reliability of a breath testing device must come from the Ohio Supreme Court, not this court."
See, also, Miskel, supra.
 {¶ 35} For the foregoing reasons, we overrule all eight of defendant's assignments of error and affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Bryant and French, JJ., concur.
[1] A copy of the report adopting the dual testing procedure is attached to the written proffer and is incorporated by reference therein.