[Cite as *State v. Reese*, 2018-Ohio-1654.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

Court of Appeals No. L-17-1184

    Appellee

Trial Court No. TRC-17-04978

v.

Johnny L. Reese, Sr.

**DECISION AND JUDGMENT**

    Appellant

Decided:  April 27, 2018

* * * * *

David Toska, City of Toledo Chief Prosecutor, and
Henry Schaefer, Assistant Prosecutor, for appellee.

Eric Allen Marks, for appellant.

* * * * *

**JENSEN, J.**

## I.  Introduction

**{¶ 1}** Appellant, Johnny Reese, appeals the judgment of the Toledo Municipal Court, sentencing him to 360 days in jail after finding him guilty of operating a motor vehicle under the influence of alcohol ("OVI") and driving under OVI suspension.  We affirm.

## A. Facts and Procedural Background

{¶ 2}  On March 8, 2017, appellant was issued a citation charging him with one count of OVI in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, one count of driving under OVI suspension in violation of R.C. 4510.14, a misdemeanor of the first degree, and one count of driving in marked lanes in violation of R.C. 4511.33, a minor misdemeanor.  The citation was issued during a traffic stop conducted by Ohio State Highway Patrol trooper Logan Kirkendall.

{¶ 3} Prior to the stop, Kirkendall observed appellant operating his vehicle in excess of the posted speed limit and allegedly crossing the centerline.  Kirkendall ran appellant's license plates, and determined that the vehicle appellant was driving was owned by someone with a suspended driver's license and limited driving privileges. Upon questioning, Kirkendall was able to confirm that appellant was the owner of the vehicle and was subject to the license suspension.

{¶ 4} At the outset of the traffic stop, which occurred at 1:00 a.m., Kirkendall observed that appellant's eyes were bloodshot and glassy, and a strong odor of alcohol was coming from appellant's vehicle.  Kirkendall learned that appellant had recently left the Déjà Vu gentlemen's club, which was not included in appellant's limited driving privileges.  Appellant then exited the vehicle and was asked to undergo field sobriety tests, the results of which led Kirkendall to conclude that appellant was under the influence.  Consequently, appellant was arrested and issued a citation for the aforementioned charges.

2.

{¶ 5} One week after his arrest, appellant entered a plea of not guilty and waived his speedy trial rights. The matter proceeded through discovery and, on May 23, 2017, appellant filed a motion to suppress in which he challenged the constitutionality of the traffic stop. A hearing on the motion was held on June 20, 2017. Kirkendall was the only witness to testify at the hearing. Following Kirkendall's testimony, the trial court denied appellant's motion to suppress.

{¶ 6} The matter then proceeded to a bench trial. Once again, Kirkendall was the only witness. At the close of the state's case, appellant moved for acquittal under Crim.R. 29. The trial court denied the motion as to the OVI charge and the charge for driving under OVI suspension. The court granted appellant's motion as to the charge of driving in marked lanes. Thereafter, the court found appellant guilty of OVI and driving under OVI suspension. The court sentenced appellant to 180 days in jail for each charge, and ordered the terms to be served consecutively. Additionally, the court ordered appellant to pay a fine and costs, and suspended appellant's driver's license for three years.

{¶ 7} Three weeks after appellant was sentenced, the trial court issued an entry suspending the remainder of his jail sentence and placing him on probation for two years. Appellant's timely notice of appeal followed.

3.

## B. Assignments of Error

{¶ 8} On appeal, appellant presents two assignments of error:

First Assignment of Error: The trial court erred in denying appellant's motion to suppress.

Second Assignment of Error: The trial court erred in sentencing appellant to consecutive maximum jail terms.

## II. Analysis

## A. Motion to Suppress

{¶ 9} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress.

{¶ 10} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court assumes the role of fact finder on a motion to suppress and, as such, determines witness credibility and resolves factual disputes. *State v. Codeluppi*, 139 Ohio St.3d 165, 10 N.E.3d 691, 2014-Ohio-1574, ¶ 7, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Therefore, on appeal, we accept as true any facts found by the trial court and supported by competent and credible evidence. *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 28 (6th Dist.). However, we independently determine, without deference to the trial court, the application of law to the facts. *State v. Jones-Bateman*, 6th Dist. Wood No. WD-11-074,

4.

2013-Ohio-4739, ¶ 9, citing *State v. Claytor*, 85 Ohio App.3d 623, 626, 620 N.E.2d 906 (4th Dist.1993).

{¶ 11} "In order to conduct an investigative stop of a motor vehicle, a police officer must have an articulable and reasonable suspicion that the motorist is engaged in criminal activity or is operating his vehicle in violation of the law." *City of Sylvania v. Comeau*, 6th Dist. Lucas No. L-01-1232, 2002-Ohio-529, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Reasonable suspicion constitutes something less than probable cause. *State v. Carlson*, 102 Ohio App.3d 585, 590, 657 N.E.2d 591 (9th Dist.1995). The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus.

{¶ 12} Here, Kirkendall testified that he stopped appellant's vehicle once he determined that the owner of the vehicle was under a license suspension with limited driving privileges.[1] We have previously stated that "reliable evidence that the driver/owner of a vehicle lacks a valid operator's license may create reasonable suspicion of criminal activity to support a traffic stop." *State v. Mitchell*, 6th Dist. Lucas No.

---

[1] Kirkendall also indicated that he observed appellant commit a marked lanes violation and a speeding violation. However, Kirkendall stated that the traffic stop was precipitated by his discovery that the vehicle owner's driver's license had been suspended. Moreover, appellant was found not guilty of driving in marked lanes. Because the arguments advanced by the parties in this case are limited to whether the traffic stop was justified on the basis of the license suspension, we do not address whether the alleged speeding violation gave rise to reasonable suspicion sufficient to justify the traffic stop.

5.

L-10-1047, 2010-Ohio-4708, ¶ 15 (internal quotations and citation removed). Nonetheless, appellant argues that reasonable suspicion was not present here because Kirkendall had not ruled out the possibility that appellant was driving in accordance with his limited driving privileges prior to initiating the traffic stop. In support, appellant cites the Fourth District's decision in *State v. Elliott*, 4th Dist. Washington No. 08CA50, 2009-Ohio-6006.

{¶ 13} In *Elliott*, the arresting police officer observed a vehicle driven by the defendant leaving a bar parking lot at approximately 1:00 a.m. The officer subsequently learned that the automobile's owner had a suspended driver's license with limited driving privileges, and a traffic stop was initiated. The defendant filed a motion to suppress, in which he asserted that the officer did not possess reasonable suspicion to conduct the traffic stop because, although he was aware that the registered owner had a suspended license, he also knew that the owner had limited driving privileges.

{¶ 14} On review, the Fourth District rejected the defendant's argument and upheld the constitutionality of the traffic stop. In so doing, the court held that an officer possesses reasonable suspicion sufficient to warrant a traffic stop when the officer learns that the registered owner of the vehicle has a suspended license with limited driving privileges and observes the vehicle in operation at a late hour in a location that provides a reasonable inference that the driver may not be operating the vehicle within the scope of his limited driving privileges. *Id.* at ¶ 2. In further explaining its holding, the court stated:

6.

Because there is nothing in the record that indicates [the officer] was able to determine the actual scope and terms of Elliott's limited driving privileges, there must be additional factors present that led [the officer] to reasonably believe that Elliott was nonetheless driving illegally. Thus, if [the officer's] justification for the investigatory stop was premised entirely on the information he obtained from police dispatch regarding the owner's driving status, the reasonableness of the stop would be in question. But here there are two additional facts from which [the officer] was able to reasonably infer that illegal activity was afoot.

The late hour when the incident occurred directly supports the rational inference that Elliott may not have been operating his automobile in accordance with his limited driving privileges, i.e., 1:00 AM is not a time typically associated with traveling to or from work. Even though [the officer] was unaware of the actual terms of the registered owner's limited driving privileges, a police officer is not acting unreasonably when he assumes that limited driving privileges restrict travel to a place of employment. We have previously recognized that "such privileges are generally occupational privileges, allowing operators to commute back and forth to work." *State v. Seward*, Ross App. No. 05CA2864, 2006-Ohio-2058, at ¶ 11. In the absence of "shift work," the morning and evening hours are times typically associated with occupational travel. 1:00AM is

7.

not. Thus [the officer] could reasonably infer that the driver was not on route to or from his place of employment.

That Elliott was parked near the bar and tattoo shop, by itself, would not reasonably indicate to [the officer] that Elliott was driving under suspension. However, bars and tattoo parlors are businesses primarily associated with recreational or social activities. Granted, these businesses employ people. But if you observe a person walk out of an open bar or tattoo parlor at 1:00 AM, it is rational to assume that they are a patron. [The officer] did not observe Elliott exit either business. But the trial court found that the only active businesses in the vicinity of the parking lot were the bar and tattoo parlor. Because they were the only active businesses in the area, [the officer] could reasonably suspect that Elliott was parked in that lot because he was a recent patron of one or the other and was not leaving work. Under these circumstances, [the officer's] belief that Elliott did not have limited driving privileges to "go to an establishment of that sort" was reasonable. *Id.* at ¶ 17-19.

{¶ 15} In *State v. Peek*, 5th Dist. Licking No. 16-CA-84, 2017-Ohio-4427, the Fifth District applied *Elliott* in its examination of whether an officer may constitutionally conduct a traffic stop upon learning that the vehicle's owner is under a license suspension with limited driving privileges. There, the court held that the officer had reasonable suspicion to conduct a traffic stop at 12:45 a.m. after learning that the owner of the

8.

vehicle was under an OVI suspension with limited driving privileges. The court found that the late hour justified the stop based upon its recognition that limited driving privileges are typically granted for occupational reasons and 12:45 a.m. is not a time of day typically associated with driving to or from work. *Id*. at ¶ 20.

{¶ 16} As with the defendants in *Elliott* and *Peek*, appellant was pulled over at a late hour, 1:00 a.m., in this case. Appellant attempts to distinguish *Elliott* from the present case on the basis that Kirkendall did not observe appellant exiting a bar. However, we find that this distinction does not demand a different result in the light of the late hour and the totality of the circumstances surrounding the stop. This conclusion is consistent with the Fifth District's decision in *Peek*, where reasonable suspicion was found based only upon the driver's license suspension and the late hour. Therefore, we hold that Kirkendall had reasonable suspicion to stop appellant's vehicle.

{¶ 17} Moreover, we have previously indicated that "the assertion that an accused had occupational driving privileges is an affirmative defense, and the burden is on the accused to demonstrate that he was driving within the scope of those privileges at the time of the stop." *Mitchell*, 6th Dist. Lucas No. L-10-1047, 2010-Ohio-4708, at ¶ 15, citing *State v. Bonn*, 101 Ohio App.3d 69, 72, 654 N.E.2d 1346 (9th Dist.1995). Consequently, we find that the existence of limited driving privileges in this case did not prevent Kirkendall from conducting a constitutionally valid traffic stop after learning of the license suspension.

{¶ 18} Accordingly, appellant's first assignment of error is not well-taken.

9.

## B. Sentencing

**{¶ 19}** In his second assignment of error, appellant argues that the trial court erred in imposing consecutive maximum sentences.

**{¶ 20}** We examine misdemeanor sentences under an abuse of discretion standard of review. *State v. Cook*, 6th Dist. Lucas No. L-15-1178, 2016-Ohio-2975, ¶ 18-19. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 21}** There are two overriding purposes of misdemeanor sentencing: (1) to protect the public from future crime by the offender and others, and (2) to punish the offender. R.C. 2929.21(A). The court is directed to achieve these purposes by considering "the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." *Id.* Moreover, the court is guided in its fashioning of an appropriate misdemeanor sentence by the following factors contained in R.C. 2929.22(B)(1):

(a) The nature and circumstances of the offense or offenses;

(b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;

10.

(c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;

(d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;

(e) Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section;

(f) Whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses;

(g) The offender's military service record.

{¶ 22} R.C. 2929.24(A)(1) establishes a 180-day maximum jail sentence for a misdemeanor of the first degree. Appellant's offenses were misdemeanors of the first degree for which he was sentenced to 180 days in jail. Thus, appellant's sentence falls within the applicable statutory range. "When a misdemeanor sentence is imposed within

the statutory limits, a reviewing court will presume the trial judge followed the statutes, unless there is evidence to the contrary." *State v. Jones*, 6th Dist. Lucas No. L-16-1014, 2017-Ohio-413, ¶ 9, citing *Cook* at ¶ 18.

**{¶ 23}** Appellant has presented no evidence to demonstrate that the trial judge failed to follow the relevant sentencing statutes. Moreover, he acknowledges his history of alcohol-related offenses. Our review of the sentencing transcript reveals that the trial judge originally intended to impose a 170-day sentence that would be immediately suspended. However, due to appellant's refusal to acknowledge responsibility in this case, the trial judge deemed it appropriate to impose consecutive 180-day sentences in order to "get [appellant's] attention." On this record, we cannot say that the trial court abused its discretion in fashioning appellant's sentence.

**{¶ 24}** Accordingly, appellant's second assignment of error is not well-taken.

### III.  Conclusion

**{¶ 25}** In light of the foregoing, the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

                                                                  JUDGE

James D. Jensen, J.

                                 _____

Christine E. Mayle, P.J.                                        JUDGE
CONCUR.

                                 _____

                                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.