**[Cite as *State v. Peek*, 2017-Ohio-4427.]**

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patrica A. Delaney, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| BENJAMIN PEEK | : | Case No. 16-CA-84 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County
                            Municipal Court, Case No.
                            16TRD05706

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            June 19, 2017

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

CAROLINE J. CLIPPINGER                MICHAEL R. DALSANTO
Newark City Law Director's Office     33 West Main Street, Suite 106
40 West Main Street, 4th Floor        Newark, Ohio 43055
Newark, Ohio 43055

*Baldwin, J.*

**{¶1}** Defendant-appellant Benjamin Peek appeals the denial of his Motion to Suppress by the Licking County Municipal Court. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On June 6, 2016, a complaint was filed charging appellant with driving under an OVI suspension in violation of R.C. 4510.14, a misdemeanor of the first degree. At his arraignment on June 14, 2016, appellant entered a plea of not guilty to the charge.

**{¶3}** On July 25, 2016, appellant filed a Motion to Suppress, arguing that law enforcement did not have reasonable suspicion of criminal activity to support the traffic stop in this case. A hearing on appellant's motion was held on September 6, 2016.

**{¶4}** At the hearing, Officer Anthony Southard of the Granville Police Department testified that he was working on June 5, 2016 at approximately 12:45 a.m. and was in uniform in a marked cruiser. He testified that while on routine patrol, he was doing random registration checks on license plates. According to the Officer, dispatch informed him that the registered owner of appellant's vehicle was under an OVI suspension with limited driving privileges. The Officer then stopped appellant to verify his driving privileges. When Officer Southard spoke with appellant, appellant told him that he had work privileges, but was "unable to produce those as well as registration and the insurance." Transcript of suppression hearing at 10-11. Appellant told the Officer that he worked at Roosters.

**{¶5}** Officer Southard testified that the late hour factored into his decision to stop appellant. He testified that most people are "not on their way to work at 12:45 at night, Or, getting off work at 12:45 at night. It's usually like a 3:00 or 4:00 a.m. shift that they're

doing a shift change of something like that." Transcript of suppression hearing at 12. Appellant was cited for driving under an OVI suspension.

{¶6} On cross-examination, Officer Southard testified that if he runs the LEADS report and sees that a driver has limited driving privileges, he automatically pulls him or her over unless there is an emergency regardless of the time of day or night. He admitted that he did not observe appellant commit any traffic violations and that the stop was to verify the driving privileges. The Officer also admitted that he did not know any of the details about appellant's driving privileges when he initiated his stop of appellant. When asked what percentage of people who have limited driving privileges are permitted to be driving at 12:45 a.m., Officer Southard did not know, but speculated that it was a smaller percentage because most people work during the day. When asked, he admitted that it was true that all types of jobs have late hours and that, when he initiated the stop in this case, he could not rule out that appellant was employed at that type of job.

{¶7} The following testimony was adduced when Officer Southard was asked on redirect whether he takes into consideration the totality of the circumstances when making a traffic stop:

> Yeah, I mean, It's late, his – light traffic, he's in front of me, I ran the plate, it came back suspended, stopped the vehicle, I was going to speak with him. If he had been coming from work, fantastic, show me your privileges, have a nice night. He didn't have any privileges on the – he was on 37. He works in Newark, he lives in Newark, why come all the way through Granville on to 37 to back to 16 East to go back to Newark? That

doesn't seem – just did not make sense to me.  So, that's why I made the determination to cite him.

{¶8}    Transcript of suppression hearing at 27.   On recross, he admitted that the information that he received from dispatch did not cause any suspicion as to where appellant was with respect to his driving privileges.

{¶9}    At the conclusion of the hearing, the trial court overruled appellant's Motion to Suppress.

{¶10}  Thereafter, on September 23, 2016, appellant withdrew his former not guilty plea and entered a plea of no contest to the charge. The trial court found appellant guilty. The trial court, pursuant to a Judgment Entry filed on the same date, ordered that appellant serve three days in jail and pay a fine in the amount of $250.00. Appellant's driver's license was also suspended for a period of thirty days.

{¶11}  Appellant now raises the following assignment of error on appeal:

{¶12}  THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE OFFICER SOUTHARD LACKED REASONABLE SUSPICION TO INITIATE A TRAFFIC STOP UPON THE APPELLANT.

I

{¶13}  Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress.  We disagree.

{¶14}  There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said

findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141(4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592, 621 N.E.2d 726(4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist.1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶15} Appellant, in the case sub judice, argues that Officer Southard lacked reasonable articulable suspicion to stop appellant's vehicle. Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts, that an occupant is or has been engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.E.2d 889 (1968). Reasonable suspicion constitutes something less than probable cause. *State v. Carlson,* 102 Ohio App.3d 585,

590, 657 N.E.2d 591 (9th Dist.1995). The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus.

{¶16} In the case sub judice, Officer Southard stopped appellant's vehicle after learning that he was driving under an OVI suspension with driving privileges. A check of BMV records is in itself not an invasion of rights pursuant to the Fourth Amendment. *State v. Owens*, 75 Ohio App.3d 523, 525, 599 N.E.2d 859 (2nd Dist. 1991). The issue thus becomes whether Officer Southard, after learning that appellant was driving under an OVI suspension with limited privileges, was entitled to stop appellant.

{¶17} In *State v. Mack,* 9th Dist. Summit No. 24328, 2009-Ohio-1056, an officer stopped a vehicle after learning that the owner of the vehicle had a suspended license with limited driving privileges. The officer did not have any specific information concerning when, where, and for what purpose the driver was permitted to operate her vehicle. The Court of Appeals found that the drivers' suspended license, combined with the fact that the stop took place at 2:00 a.m., demonstrated that the officer had a reasonable articulable suspicion for an investigatory stop of the vehicle. On such basis, the court held that the trial court had not erred in denying the defendant's Motion to Suppress.

{¶18} In *State v. Elliot,* 4th Dist. Washington No. 08CA50, 2009-Ohio-6006, the court examined a situation where a police officer observed a vehicle leaving a bar parking lot at approximately 1:00 a.m. The police dispatch had informed the officer that the automobile's owner had a license under suspension with limited driving privileges. The defendant in *Elliott* filed a Motion to Suppress, arguing that the officer did not possess reasonable articulable suspicion to conduct the investigatory stop because, although he

was aware that the registered owner had a suspended license, he also knew that the owner had limited driving privileges. In upholding the reasonableness of the stop, the court, in *Elliot*, stated, in relevant part, as follows at paragraphs 17-19:

> Thus, absent some indication that the registered owner is not driving the automobile, police may conduct an investigatory stop if they learn that the registered owner has a suspended license. *Id.* But here there is an additional circumstance: the officer knew the registered owner has limited driving privileges. Because there is nothing in the record that indicates Chapman was able to determine the actual scope and terms of Elliott's limited driving privileges, there must be additional factors present that led Chapman to reasonably believe that Elliott was nonetheless driving illegally. Thus, if Chapman's justification for the investigatory stop was premised entirely on the information he obtained from police dispatch regarding the owner's driving status, the reasonableness of the stop would be in question. But here there are two additional facts from which Chapman was able to reasonably infer that illegal activity was afoot.

> The late hour when the incident occurred directly supports the rational inference that Elliott may not have been operating his automobile in accordance with his limited driving privileges, i.e., 1:00 AM is not a time typically associated with traveling to or from work. Even though Chapman was unaware of the actual terms of the registered owner's limited driving privileges, a police officer is not acting unreasonably when he assumes that limited driving privileges restrict travel to a place of employment. We have

previously recognized that "such privileges are generally occupational privileges, allowing operators to commute back and forth to work." *State v. Seward,* Ross App. No. 05CA2864, 2006-Ohio-2058, at ¶ 11. In the absence of "shift work," the morning and evening hours are times typically associated with occupational travel. 1:00AM is not. Thus Chapman could reasonably infer that the driver was not on route to or from his place of employment.

That Elliott was parked near the bar and tattoo shop, by itself, would not reasonably indicate to Chapman that Elliott was driving under suspension. However, bars and tattoo parlors are businesses primarily associated with recreational or social activities. Granted, these businesses employ people. But if you observe a person walk out of an open bar or tattoo parlor at 1:00 AM, it is rational to assume that they are a patron. Chapman did not observe Elliott exit either business. But the trial court found that the only active businesses in the vicinity of the parking lot were the bar and tattoo parlor. Because they were the only active businesses in the area, Chapman could reasonably suspect that Elliott was parked in that lot because he was a recent patron of one or the other and was not leaving work. Under these circumstances, Chapman's belief that Elliott did not have limited driving privileges to "go to an establishment of that sort" was reasonable.

{¶19} The Fourth District, in *Elliott* found that "[a] police officer has a constitutionally legitimate basis to stop a vehicle when: 1) the officer learns that the

registered owner of the vehicle has a suspended license with limited driving privileges; and 2) both the late hour when the driver is operating the vehicle and the location from which the vehicle is driven provide a reasonable inference that the driver may not be operating the vehicle within the scope of his limited driving privileges." Id at paragraph 2.

{¶20} We find, based on the foregoing, that Officer Southard had reasonable articulable suspicion to stop appellant after learning that appellant was under an OVI suspension with limited driving privileges. At the time of the stop, he did not know any details about the limited driving privileges, which are generally occupational in nature as noted by the court in *Elliott*, supra., and testified that he stopped appellant because of the late hour. As is stated above, it was approximately 12:45 a.m. when appellant was stopped. We concur with the court in *Elliott* that "[t]he late hour when the incident occurred directly supports the rational inference that [appellant] may not have been operating his automobile in accordance with his limited driving privileges,…" Id. at paragraph 18. We find that 12:45 a.m. is not a time typically associated with traveling to or from work and that the Officer had reasonable articulable suspicion to stop appellant to verify his driving privileges. We find, therefore, that the trial court did not err in denying appellant's Motion to Suppress.

{¶21} Appellant's sole assignment of error is, therefore, overruled.

**{¶22}** Accordingly, the judgment of the Licking County Municipal Court is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.