[Cite as *State v. Owens*, 2019-Ohio-440.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  1-18-48

      v.

WILLIE J. OWENS,                  O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  1-18-49

      v.

WILLIE J. OWENS,                  O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Lima Municipal Court**
**Trial Court Nos. 18TRD01769 and 18TRD01812**

**Judgments Affirmed**

**Date of Decision:   February 11, 2019**

APPEARANCES:

      *Michael J. Short* **for Appellant**

      *Anthony M. DiPietro* **for Appellee**

**PRESTON, J.**

{**¶1**} Defendant-appellant, Willie J. Owens ("Owens"), appeals the August 21, 2018 judgments of sentence of the Lima Municipal Court. For the reasons that follow, we affirm.

{**¶2**} On October 10, 2016, Owens was placed under an administrative license suspension, which was to last until October 10, 2018. (State's Ex. A).

{**¶3**} On February 23, 2018, Owens was issued a citation for driving under OVI suspension in violation of R.C. 4510.14(A). (Case No. 18TRD01769, Doc. No. 1). On February 26, 2018, Owens was issued a second citation for driving under OVI suspension in violation of R.C. 4510.14(A). (Case No. 18TRD01812, Doc. No. 1). On February 28, 2018, Owens appeared for arraignment and pleaded not guilty to both charges. (Case No. 18TRD01769, Doc. No. 4); (Case No. 18TRD01812, Doc. No. 4).

{**¶4**} Following a bench trial on July 24, 2018, the trial court found Owens guilty of both charges. (*See* Case No. 18TRD01769, Doc. Nos. 8, 9); (*See* Case No. 18TRD01812, Doc. Nos. 8, 9). The trial court filed its judgment entries of conviction on August 3, 2018. (Case No. 18TRD01769, Doc. No. 9); (Case No. 18TRD01812, Doc. No. 9).

{**¶5**} On August 21, 2018, the trial court sentenced Owens to 90 days in jail in case number 18TRD01769, suspending all but 3 of those days on condition that

Owens commit no further violations of R.C. 4510.14 for two years. (Case No. 18TRD01769, Doc. No. 17). In addition, the trial court fined Owens $250, impounded his motor vehicle and license plates for 30 days, suspended his license for 10 days, and assessed six points against his license. (*Id.*). That same day, in case number 18TRD01812, the trial court sentenced Owens to 120 days in jail, suspending all but 7 of those days on condition that Owens commit no further violations of R.C. 4510.14 for two years. (Case No. 18TRD01812, Doc. No. 17). In addition, the trial court fined Owens $400, impounded his motor vehicle and license plates for 30 days, suspended his license for 10 days, and assessed six points against his license. (*Id.*). The trial court ordered that the jail terms in case numbers 18TRD01769 and 18TRD01812 be served consecutively for a total of 10 days in jail. (*Id.*). Finally, the trial court ordered that the periods of vehicle and license plates impoundment and license suspension in case numbers 18TRD01769 and 18TRD01812 be served consecutively to one another. (*Id.*).

{¶6} On August 21, 2018, Owens filed notices of appeal. (Case No. 18TRD01769, Doc. No. 15); (Case No. 18TRD01812, Doc. No. 14). Owens's appeals were subsequently consolidated for purposes of briefing and argument. He raises two assignments of error, which we address together.

**Assignment of Error No. I**

**The convictions were against the manifest weight of the evidence.**

**Assignment of Error No. II**

**The convictions were based on insufficient evidence.**

{¶7} In his first and second assignments of error, Owens argues that his driving-under-OVI-suspension convictions are against the manifest weight of the evidence and unsupported by sufficient evidence. Specifically, Owens argues that his convictions are against the manifest weight of the evidence because "[t]he State failed to prove beyond a reasonable doubt that [he] was operating his vehicle outside of the scope of his driving privileges." (Appellant's Brief at 7). Furthermore, Owens argues that because he was operating his motor vehicle within the scope of his driving privileges, his convictions are not supported by sufficient evidence as "[n]o reasonable fact finder could have found each element of the offense proven beyond a reasonable doubt." (*Id.* at 8).

{¶8} Before addressing the merits of Owens's assignments of error, we must first determine the proper scope of our review. Owens was convicted of two counts of driving under OVI suspension in violation of R.C. 4510.14(A). R.C. 4510.14(A) provides, in relevant part:

No person whose driver's * * * license or permit * * * has been suspended under section 4511.19, 4511.191, or 4511.196 of the Revised Code or under section 4510.07 of the Revised Code for a conviction of a violation of a municipal OVI ordinance shall operate

-4-

any motor vehicle upon the public roads or highways within this state

during the period of the suspension.

Thus, to sustain a conviction for driving under OVI suspension, the State must prove beyond a reasonable doubt that a defendant (1) operated (2) any motor vehicle (3) on a public road or highway (4) during the period of a license suspension rendered under R.C. 4511.19, 4511.191, 4511.196, or 4510.07.  *See* R.C. 4510.14(A).

{¶9} On appeal, Owens does not dispute that he was operating a motor vehicle on public roads or that his license was suspended under any of R.C. 4511.19, 4511.191, 4511.196, or 4510.07.  Instead, Owens argues that the trial court erred by finding him guilty of driving under OVI suspension because he had driving privileges to drive to and from work and he was driving within the scope of his occupational driving privileges when he received the two citations.  In so arguing, Owens contends that the State bore the burden of proving beyond a reasonable doubt that he was operating his motor vehicle outside of the scope of his driving privileges.

{¶10} However, contrary to Owens's assertion, R.C. 4510.14(A) does not require the State to prove beyond a reasonable doubt that a defendant was driving outside of the scope of his or her driving privileges in order to sustain a conviction for driving under OVI suspension.   "'[T]he assertion that an accused had occupational driving privileges is an affirmative defense, and the burden is on the accused to demonstrate [by a preponderance of the evidence] that he

was driving within the scope of those privileges at the time of the stop.'" *State v. Reese*, 6th Dist. Lucas No. L-17-1184, 2018-Ohio-1654, ¶ 17, quoting *State v. Mitchell*, 6th Dist. Lucas No. L-10-1047, 2010-Ohio-4708, ¶ 15, citing *State v. Bonn*, 101 Ohio App.3d 69, 72 (9th Dist.1995). *See State v. Lauch*, 122 Ohio App.3d 522, 525 (1st Dist.1997); *State v. Pappas*, 11th Dist. Lake No. 94-L-183, 1995 WL 803617, *5-6 (Dec. 1, 1995); *Chagrin Falls v. Somers*, 8th Dist. Cuyahoga No. 62481, 1993 WL 146528, *2 (May 6, 1993); *Marysville v. Graves*, 3d Dist. Union No. 14-86-16, 1988 WL 40442, *2 (Apr. 28, 1988). *See also* R.C. 2901.05(A) ("The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."). Therefore, instead of arguing that the evidence fails to establish one of the substantive elements of the offense of driving under OVI suspension, Owens is actually arguing that the trial court erred by rejecting his driving-privileges affirmative defense.

{¶11} While Owens asks this court to consider the trial court's purported error under both sufficiency-of-the-evidence and manifest-weight-of-the-evidence review, the error alleged by Owens is not subject to sufficiency-of-the-evidence review. Sufficiency-of-the-evidence review concerns "the sufficiency of the state's evidence, not the strength of defense evidence" and is accordingly "'applied with explicit reference to the *substantive elements of the criminal offense as defined by*

*state law*.'" (Emphasis sic.) *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 38, quoting *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781 (1979), fn. 16. "'[T]he due process "sufficient evidence" guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.'" *Id.* at ¶ 37, quoting *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir.1999), abrogated on other grounds by the Antiterrorism and Effective Death Penalty Act, Section 2261 et seq., Title 28, U.S. Code. As a result, Owens's challenge to the sufficiency of the evidence as it pertains to his driving-privileges affirmative defense is inappropriate. *See State v. Wagner*, 3d Dist. Seneca No. 13-15-18, 2015-Ohio-5183, ¶ 7, citing *State v. Vasquez*, 10th Dist. Franklin No. 13AP-366, 2014-Ohio-224, ¶ 52; *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 10-11, citing *Vasquez* at ¶ 52. Furthermore, because Owens does not challenge the sufficiency of the State's evidence supporting any of the substantive elements of the offense of driving under OVI suspension, we decline to conduct sufficiency-of-the-evidence review at all.

{¶12} Nevertheless, the error alleged by Owens does not escape our review entirely. "When reviewing a claim by a defendant that evidence supports an affirmative defense, the manifest weight standard is the proper standard of review." *State v. Johns*, 3d Dist. Seneca Nos. 13-04-23, 13-04-24 and 13-04-25,

2005-Ohio-1694, ¶ 19; *State v. Coleman*, 8th Dist. Cuyahoga No. 80595, 2002-Ohio-4421, ¶ 30. *See Hancock* at ¶ 39-42; *Wagner* at ¶ 7. In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶13} Here, Owens does not dispute that the State proved the substantive elements of the offense of driving under OVI suspension. Therefore, we limit our analysis to determining whether the trial court's rejection of Owens's driving-

privileges affirmative defense is against the manifest weight of the evidence. *See Wagner* at ¶ 9; *Bagley* at ¶ 14.

**{¶14}** At the July 24, 2018 trial, the State first offered the testimony of Sergeant Nicholas Hart ("Sergeant Hart") of the City of Lima Police Department. (July 24, 2018 Tr. at 11). Sergeant Hart testified that at approximately 10:30 on the morning of February 26, 2018, he was on motor patrol when he observed a gray Ford Taurus turn northbound from Vine Street onto a dead-end street. (*Id.*). He testified that he observed the vehicle stop and that he watched as a woman "believed to possibly be a local street walker or a prostitute" approached the vehicle. (*Id.* at 12). Soon thereafter, Sergeant Hart watched as the vehicle pulled away from the female, at which point he "got behind the vehicle and followed it." (*Id.*). After observing the driver of the vehicle commit a marked lane violation, Sergeant Hart executed a traffic stop. (*Id.*).

**{¶15}** Sergeant Hart identified Owens as the driver of the gray Ford Taurus. (*Id.*). Sergeant Hart testified that, after making contact with Owens, he conducted a routine check of Owens's driving status that revealed that Owens's driver's license was suspended. (*Id.* at 13). He stated that although Owens advised him that he had driving privileges, he could not recall whether Owens produced his driving privileges card during the stop. (*Id.*). Sergeant Hart testified that Owens "said he had privileges to drive to and from work and for doctor's appointments." (*Id.*).

Sergeant Hart testified that when he asked Owens to explain why he was driving his vehicle that morning, Owens first indicated that he "had just left court * * * from Main Street" but that he later "changed his statement to court on Market Street." (*Id.*). However, Sergeant Hart stated that he was familiar with the area where Owens resides and that the area of Lima in which he encountered Owens was not consistent with him returning home from either courthouse. (*Id.*). He remarked that Owens went "entirely outside of the way and then completely around the block" and that "[i]t was not the most direct route" home for him. (*Id.* at 14).

{¶16} Sergeant Hart then identified State's Exhibit C as Owens's "administrative license suspension limited driving privileges permit card." (*Id.*). (*See* State's Ex. C). Owens's driving privileges permit card provides that Owens's driver's license had been "suspended except for the privileges to drive to, from and for work purposes in a non-commercial vehicle and as noted below." (State's Ex. C). However, the spaces on the privileges card reserved for identification of Owens's place of employment, days of employment, and hours of employment are blank. (*Id.*). In addition, the card provides that he could drive "to/from any and all regularly scheduled medical and dental appointments for himself" and that he must carry the privileges card with him at all times. (*Id.*).

{¶17} Sergeant Hart testified that based on his experience with other drivers with limited driving privileges, driving privileges cards typically specify the driver's

place of employment. (July 24, 2018 Tr. at 14-15). He observed that Owens's driving privileges card did not grant him privileges to drive to or from any courthouse and that it expressly authorized driving only for "regularly scheduled medical and dental appointments for himself." (*Id.* at 15-16). Finally, Sergeant Hart opined that even if Owens were actually driving home from one of Lima's courthouses, he would still be in violation of his driving privileges because Owens was not granted privileges to drive to or from court. (*Id.* at 16).

{¶18} On cross-examination, Sergeant Hart testified that while he could not remember whether Owens produced his driving privileges card during the traffic stop, he also could not "recall that [Owens] did not show it." (*Id.* at 17-18). In addition, Sergeant Hart testified that he was familiar with "a body shop on 214 South Central [Avenue]," Owens's place of employment, but that "several blocks," "a dead end," and "an open field" separated the body shop from the location where he first observed Owens. (*Id.* at 18). Finally, he testified that he remembered that there was a fire at "Howard's E-Z Check" but that he could not recall exactly when the fire occurred or whether it occurred at or near the time he executed the stop of Owens's vehicle. (*Id.*).

{¶19} On redirect-examination, Sergeant Hart testified that Owens's course of travel was not consistent with him returning home from P1 Automotive, the body shop on 214 South Central Avenue. (*Id.* at 18-19). Sergeant Hart opined that "[i]f

[Owens] would have traveled from * * * P1 Automotive down Central, he would have just continued rather than making a turn onto Vine Street at all. It would have just been a straight shot down to * * * 4th Street and then a right hand turn." (*Id.* at 19).

{¶20} Next, Deputy Jared Gesler ("Deputy Gesler") of the Allen County Sheriff's Office testified that on February 23, 2018, he executed a traffic stop of Owens's vehicle near the intersection of "St. John[s] [Avenue] and 4th Street" after Owens "failed to utilize his turn signal." (*Id.* at 20-22). Deputy Gesler identified Owens as the driver of the vehicle he pulled over. (*Id.* at 22). He testified that when he asked Owens for his driver's license, Owens told him that he "had driving privileges but he didn't have them with him." (*Id.* at 22-23). Deputy Gesler stated that he was able to determine that Owens's driver's license was suspended. (*Id.* at 23).

{¶21} Deputy Gesler testified that when he asked Owens why he was driving that day, Owens "told [him] he was just driving around." (*Id.*). Deputy Gesler then examined State's Exhibit C and testified that it was consistent with driving privileges cards he had encountered in the past. (*Id.* at 23-24). He testified that the driving privileges card did not indicate that Owens had driving privileges for work or that he had driving privileges "to just drive around." (*Id.* at 24). He also stated that the driving privileges card indicated that Owens was required to carry the card

with him at all times. (*Id.*). Deputy Gesler testified that in light of Owens's stated reasons for driving on February 23, 2018 and the scope of his driving privileges, Owens was in violation of his driving privileges at the time of the stop. (*Id.* at 24-25).

**{¶22}** Thereafter, the State moved to admit its exhibits and rested. (*Id.* at 26). Owens and the State stipulated to the admission of State's Exhibits A, B, and C, and the same were admitted without objection.[1] (*Id.* at 27). (*See* State's Exs. A, B, C).

**{¶23}** Owens then testified in his own defense. He testified that on February 26, 2018, he was "headed home" from work at P1 Automotive when he was pulled over by Sergeant Hart. (July 24, 2018 Tr. at 29, 31-32). He testified that he entered the dead-end street where Sergeant Hart first observed him because he believed that it would "lead back to Center Street" and that he turned around once he realized it was a dead-end. (*Id.* at 29). Owens mentioned seeing "a lady walking across the field" at the end of the dead-end street but he did not state that she approached his car or that he spoke with her. (*Id.* at 30). Owens then described the route he allegedly took home from work that morning, insisting that he was forced to take a

---

[1] State's Exhibits A and B were not identified or reviewed by Sergeant Hart or Deputy Gesler. State's Exhibit A is a certified copy of Owens's driving record showing that he was subject to an administrative license suspension from October 10, 2016 until October 10, 2018. (State's Ex. A). State's Exhibit B is a November 14, 2016 judgment entry of conviction and sentence of the Lima Municipal Court. (State's Ex. B). State's Exhibit B reflects that Owens pleaded guilty to having physical control of a vehicle while under the influence in violation of R.C. 4511.194 and that, as a result, his administrative license suspension was continued with a grant of limited driving privileges. (*Id.*).

detour because St. Johns Avenue was completely blocked by firetrucks responding to a fire at the "E-Z Check." (*Id.* at 30-31). Owens further testified that he showed Sergeant Hart his driving privileges card during the traffic stop. (*Id.* at 31-32).

**{¶24}** Owens then testified regarding the traffic stop initiated by Deputy Gesler on February 23, 2018. Owens testified that he was headed home from work when Deputy Gesler pulled him over. (*Id.* at 33). He testified that he told Deputy Gesler that he "just had got off of work" and denied telling Deputy Gesler that he was "just riding around." (*Id.*).

**{¶25}** Owens reiterated that he was working for the body shop on both February 23 and 26, 2018. (*Id.*). To support his claim, Owens introduced Defendant's Exhibit 1, a letter from his employer at P1 Automotive. (*Id.* at 34). (*See* Defendant's Ex. 1). Defendant's Exhibit 1 states: "Willie James Owens is an employee at P-I Automotive. He works six days a week (Monday thru Saturday) from 9:00 a.m. to 8:00 p.m. On the dates in question, February 23 and 26, 2018, Mr. Owens was in route to work." (Defendant's Ex. 1).

**{¶26}** Owens then examined State's Exhibit C. He testified that although his driving privileges card did not specify his employer, days of employment, or hours of employment, he understood the driving privileges card as granting him "driving privilege to drive to and from work at all times * * * just during the work hours and nothing else." (July 24, 2018 Tr. at 35). In addition, he testified that he understood

the driving privileges card as granting him privileges to drive to and from scheduled medical and dental appointments. (*Id.* at 35-36).

{¶27} On cross-examination, Owens reviewed State's Exhibit B, a copy of the November 14, 2016 judgment entry of conviction and sentence of the Lima Municipal Court that sets forth his driving privileges. Owens admitted that the judgment entry does not contain language granting him privileges to drive to and from work, privileges for "joyriding," or privileges to drive to and from court. (*Id.* at 38-39). (*See* State's Ex. B).

{¶28} Thereafter, Owens moved to admit his exhibit and rested. (July 24, 2018 Tr. at 43). Defendant's Exhibit 1 was admitted without objection. (*Id.*). The State did not present any evidence on rebuttal. (*Id.* at 44).

{¶29} We conclude that Owens's driving-under-OVI-suspension convictions are not against the manifest weight of the evidence because the trial court did not clearly lose its way by rejecting Owens's driving-privileges affirmative defense. We note that Owens and the State dispute the scope of Owens's driving privileges. According to Owens, at the time he received the citations, he had privileges to drive to and from work, and he was en route home from work when he was cited. In contrast, the State argues that Owens's driving privileges at the time he received the citations were strictly limited to driving to and from any regularly scheduled medical or dental appointments. The trial court agreed with the State's

-15-

position and found that the only driving privileges granted to Owens were for regularly scheduled medical and dental appointments. (Case No. 18TRD01769, Doc. Nos. 8, 9); (Case No. 18TRD01812, Doc. Nos. 8, 9). However, we need not and do not determine whether the trial court correctly construed the scope of Owens's driving privileges. Even assuming that Owens had occupational driving privileges, Owens bore the burden of proving by a preponderance of the evidence that he was in fact driving to or from work, and for the reasons stated below, the trial court's conclusion that he failed to carry that burden is not against the weight of the evidence.

{¶30} First, Owens's claim that he was returning home from work when he received each of the citations did not go unchallenged by the State. Sergeant Hart testified that Owens told him that he was returning home from one of the courthouses in Lima; Deputy Gesler testified that Owens remarked that he was "just driving around." (July 24, 2018 Tr. at 13, 23). If believed by the trial court, Sergeant Hart's and Deputy Gesler's testimony weighs against Owens's claim that he was driving within the scope of his occupational driving privileges because driving to and from court and "just driving around" would be clearly outside of the scope of those limited privileges. Ultimately, the trial court elected to believe Sergeant Hart's and Deputy Gesler's testimony, explicitly finding that each of them was a credible witness. (*See* Case No. 18TRD01769, Doc. No. 9); (*See* Case No.

18TRD01812, Doc. No. 9). Although Owens insisted repeatedly that he was returning home from work when he was issued the citations, the trial court expressly determined that Owens's testimony was not credible. (*Id.*); (*Id.*). The trial court was in the best position to evaluate Sergeant Hart's, Deputy Gesler's, and Owens's credibility, and this court may not substitute its judgment for that of the trial court. *See State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 50. The fact that the trial court believed the State's witnesses' versions of events instead of Owens's does not render Owens's convictions against the manifest weight of the evidence. *See State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11 ("[I]t is well-established that '[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony.'"), quoting *State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶ 38.

{¶31} In addition, the hours at which Owens was issued the citations weigh against a finding that he was driving within the scope of any occupational driving privileges. Owens was cited at approximately 6:10 p.m. on February 23, 2018 and at approximately 10:35 a.m. on February 26, 2018. (Case No. 18TRD01769, Doc. No. 1); (Case No. 18TRD01812, Doc. No. 1). Given that the letter from Owens's employer states that his work hours were "from 9:00 a.m. to 8:00 p.m.," it is unlikely that Owens would be expected to be returning home from work at 10:35 a.m. or

6:10 p.m. (*See* Defendant's Ex. 1). Nevertheless, Owens argues that these inconsistencies are irrelevant because "people can be let off work early or be told to come in later than normal, or * * * someone could simply be late for work." (Appellant's Brief at 6). Yet, Owens did not present any evidence to the trial court suggesting that he was sent home early from work or that he was running late to work on either February 23 or 26, 2018. Owens simply did not explain why he was on the road during what he claims were his regular hours of employment. Without evidence explaining this irregularity, the times at which Owens received the citations are relevant facts weighing against a finding that Owens was operating his vehicle within the scope of any occupational driving privileges.

{¶32} Moreover, the letter from Owens's employer does not weigh strongly in favor of Owens's affirmative defense. The letter from Owens's employer states that Owens "was in route *to work*" when he received the citations. (Emphasis added.) (Defendant's Ex. 1). Conversely, Owens testified that he was returning home *from work* on both occasions. (July 24, 2018 Tr. at 29-33). Owens did not explain this contradiction. Thus, the letter's value to Owens's affirmative defense is questionable.

{¶33} Finally, at least with respect to the February 26, 2018 citation issued by Sergeant Hart, Sergeant Hart also testified that Owens's course of travel was inconsistent with him returning home from work. (*Id.* at 18-19). Owens argues that

"nothing in the statute or the driving privileges document requires * * * or even references" a requirement that Owens take the most direct route home from work. (Appellant's Brief at 6). However, even if Owens is correct that he was not required to take the most direct route home, Owens's physical location at the time he was issued the citation is still relevant to determining whether Owens was operating his motor vehicle within the scope of any occupational driving privileges he may have had. Therefore, Sergeant Hart's testimony that Owens's location was not consistent with him returning home from work weighs against Owens's claim that he was driving home from work when he received the February 26, 2018 citation.

{¶34} Altogether, we cannot conclude that the trial court, by rejecting Owens's driving-privileges affirmative defense, clearly lost its way and created such a manifest miscarriage of justice that Owens's driving-under-OVI-suspension convictions must be reversed and new trials ordered.

{¶35} Owens's assignments of error are overruled.

{¶36} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**